OPINION OF THE COURT
Debra J. Kiedaisch, J.
The respondent husband has brought a motion for summary-judgment[1] dismissing the wife’s petition which alleged the husband violated an order of protection entered on February 26, 2009 pursuant to a settlement stipulation in Family Court. The order of protection, entered without any finding of fault against the husband, directs him to refrain from committing a family offense or criminal offense against the wife and to stay at least 1,000 feet away from the residence and place of employment of the wife except for court-ordered child visitation or to attend church services on Sundays. The wife’s violation petition, supplemented by her affidavits filed on this motion, alleges the husband retained a private investigator who recorded on DVD the wife entering a motel and having an affair with one Father L., a priest assigned to the church, where the wife was employed. The wife alleges the husband furnished the DVD to her superiors at the church resulting in the wife being forced to resign. The wife contends, in effect, there was no legitimate purpose in the husband having her followed by a private detective and delivering the DVD to church officials and that doing so was intended by the husband to cause her to lose her employment and cause her personal humiliation and suffering. The wife claims such conduct constitutes a violation of the February 26, 2009 order of protection.[2] On November 10, 2008, the wife had filed a divorce action against the husband which has also *353 been assigned to the undersigned in the IDV Part, Supreme Court, Orange County. On or about January 15, 2009, the husband filed an answer and counterclaims for divorce against the wife alleging the wife was having sexual relations with a certain individual. Subsequently, on or about November 5, 2009, the husband filed a motion in the matrimonial action to amend his answer and counterclaims alleging the wife was committing adultery with Father L.[3] In opposition to the husband’s motion to dismiss the petition, the wife’s attorney alleges the husband hired the private detective after he filed his answer and counterclaims in the divorce action. The wife’s attorney contends the husband was not legally bound to turn over the DVD to church officials. The wife’s attorney contends the husband violated the order of protection by acting through an agent, the private detective he hired, to follow and record the wife’s activities, and then turning over the DVD to the church causing the wife to lose her employment.
On this summary judgment motion, it is not disputed the wife was having an affair with Father L. The investigator avers he gave his report, photos, and DVD proving such affair only to the husband in August 2009. The husband averred Father L. routinely administered Sunday mass to the husband, the wife, and their child while they attended church, together, and continued to do so on two occasions in September 2009 after the husband learned of their relationship. The husband avers he was so upset that it was Father L. who was administering mass to him and his family that he returned the host to another priest, Father A., explaining why he could not accept communion from Father L. The husband states that in his anguish he told Father A. of the photos. The husband states he pleaded with Father A. not to tell Father B., who is Father’s A.’s superior, as the husband did not want a scandal and did not want to embarrass his child. The husband states he reluctantly agreed at the insistence of Father A. to discuss the matter with Father B. upon Father A. explaining it was Father B.’s duty to investigate the matter and take appropriate action. The husband states Father B. came to the husband’s house on or about September 2, 2009 to discuss the matter and at the request of Father B. the husband gave him a copy of the DVD obtained from the investigator.
*354 If the proponent of a summary judgment motion to dismiss the petition establishes a prima facie entitlement to judgment as a matter of law, the petition must be dismissed upon the failure of petitioner to raise a triable issue of fact which would preclude such judgment (Alvarez v Prospect Hosp., 68 NY2d 320 [1986]; Jackson v New York Univ. Downtown Hosp., 69 AD3d 801 [2d Dept 2010]). Generally, a party bound to obey an order enjoining the party from committing certain acts or conduct may be guilty of contempt of such order by abetting others to violate the order without the party personally violating the order directly (Mayor of City of N.Y. v New York & Staten Is. Ferry Co., 64 NY 622 [1876]). A person bound by the injunction may not hire others to do what he or she may not do and evade the injunction by connivance (Neale v Osborne, 15 How Prac 81 [1857]). In Leggio v Leggio (190 Misc 2d 571 [2002]), the respondent was ordered to stay away from the petitioner’s residence. The respondent enlisted persons to enter the residence and remove petitioner’s property. The court held that respondent violated the order of protection by enlisting other persons to act on his behalf to commit acts he was proscribed from committing. The court in Leggio, in effect, found that enlisting others to enter the petitioner’s residence and remove her property constituted an unlawful intrusion upon the rights secured to petitioner by the order of protection for which the respondent could be held in contempt (Matter of Sarmuksnis v Priest, 21 AD3d 381 [2005]).[4]
It was not improper, per se, for the husband to retain the services of a private investigator. The hiring of a professional, licensed private investigator in a matrimonial action to gather evidence is for a proper and legitimate purpose. No case is brought to the attention of the court in which the hiring of a private investigator for such purpose has been held, per se, to be a criminal act, including harassment or stalking in violation of the Penal Law (Penal Law §§ 240.26, 120.45). The husband had the right to gather evidence up to the date of trial in defense of the matrimonial action and in support of his own counterclaims. The husband was not required to accept that the wife had necessarily ceased her extramarital affair merely upon her *355 assurance to him that she had. In fact, such representation proved to be false as the wife does not controvert that the private investigator disclosed, as the result of his investigation, that she was continuing to have an affair with Father L. Under the circumstances, the hiring of the private investigator, in and of itself, was not an unlawful intrusion upon the rights of the wife secured by the order of protection (Matter of Sarmuksnis v Priest, 21 AD3d 381 [2005]).
The next inquiry is whether delivering the DVD to the church officials, which was not necessary for the husband to defend or prosecute the divorce action, raises a triable issue of fact that the husband, in having the wife followed and recorded by a private investigator, intended to inflict emotional and financial harm upon the wife, which might constitute a violation of the order of protection. Although harassment in the second degree often involves conduct which places a person in fear of their physical safety, the language of the statute does not limit itself to only physical threats (Penal Law § 240.26). If the husband had the wife followed and recorded by a private investigator for the purpose of gathering embarrassing material to deliver to her employer, with the intention to cause her to lose her employment, such might qualify as conduct which alarms or seriously annoys another person, and serves no legitimate purpose, constituting harassment in the second degree (Penal Law § 240.26 [3]). In Matter of Eck v Eck (44 AD3d 1168 [2007]), the conduct complained of as constituting harassment in the second degree consisted of respondent making disparaging remarks and accusations concerning petitioner to petitioner’s employer. The appellate court, in affirming the dismissal of the petition, stated it did so in deference to the Family Court’s credibility determinations that the proved conduct did not support a finding of harassment in the second degree. The appellate court did not expressly rule that communications to the other person’s employer calculated to cause that person to be terminated from employment could not as a matter of law constitute harassment, if sufficiently proved. However, it is uncontroverted in this case that Father L. continued to administer communion to the husband, the wife, and the parties’ child on Sundays, after the affair became known to the husband. Under such circumstances, the husband has, prima facie, demonstrated a legitimate and justifiable purpose in communicating with church officials about the relationship between his wife and Father L. The husband avers he resisted turning *356 over the DVD to church officials fearing it would embarrass the parties’ child, but that Father A. and his superior, Father B., prevailed upon the husband to do so. Such averment that church officials pressed to receive the DVD appears credible as it would be expected that church officials would seek to obtain definitive proof, if it existed, concerning allegations that one of their priests was committing adultery with a church employee, who was also the wife of a parishioner. Such conduct, if true, would be of moral and ethical concern to the church officials as well as engendering a risk of exposing the church to potential litigation and liability. The averments by the husband concerning how the turnover of the DVD occurred are not based on evidence exclusively within the husband’s knowledge. There are other witnesses to such conversations concerning how the DVD came to be given to Father B., namely, Father A. and Father B. The wife makes no request for discovery or depositions of such witnesses prior to determination of this summary judgment motion, nor articulates any basis for concluding that such discovery would yield different evidence (Pistolese v William Floyd Union Free Dist., 69 AD3d 825 [2d Dept 2010]; Stagg v City of New York, 39 AD3d 533 [2007]).
The husband in his motion papers has, prima facie, demonstrated his entitlement to summary judgment dismissing the petition by evidence showing he did not retain the private investigator for an improper or illegitimate purpose, such as harassment or stalking under the Penal Law, or intend to make improper use of the private investigator’s work product DVD. Upon the failure of the wife to demonstrate the existence of a triable issue of fact that the husband committed a crime or family offense against her or otherwise violated the order of protection, summary judgment dismissing the petition should be granted.
Accordingly, it is hereby ordered that the petition and above-captioned proceeding are dismissed on the merits.

. The application was raised in court in papers submitted in response or in answer to the petition. In court, on November 19, 2009, the parties discussed that respondent was seeking summary dismissal of the proceeding prior to trial with the parties agreeing to submit papers in connection with said application. This court notified the parties, in writing, that the court was treating the application as a summary judgment dismissal motion pursuant to CPLR 3212. The court granted the parties additional time to submit affidavits and other admissible evidentiary material with respect to the motion which petitioner did.

. The papers sometimes erroneously refer to the February 26, 2009 order as a “temporary order of protection.” A temporary order of protection was issued on December 18, 2008 in the Family Court family offense proceeding. On February 26, 2009, the parties appeared in court and placed a final settlement *353 stipulation upon the record which resulted in the issuance, on consent, of the order of protection which the papers allege respondent violated.

. This court takes judicial notice of the papers and orders issued in the matrimonial action assigned to this IDV Part (Matter of Lane v Lane, 68 AD3d 995 [2009]).

. This case has subsequently been abrogated by the Appellate Division, Second Department, with respect to the standard of proof required to be met in making a finding of criminal contempt in a proceeding based on a violation of an order of protection, which standard is “beyond a reasonable doubt” (Matter of Rubackin v Rubackin, 62 AD3d 11, 15 [2009]).